**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | APPEALS DOCKET NO. 05-10034 |
| | ) | (D.C. NO. CR. 03-00043-ARM) |
| Plaintiff, | ) | |
| | ) | Garapan, Saipan |
| vs. | ) | |
| | ) | September 8, 2004 |
| SOON KYUNG PARK, a/k/a | ) | |
| Piao Cun Jing, a/k/a  Dr. Park, | ) | REPORTER'S ADDITIONAL TRIAL TRANSCRIPT |
| | ) | OF THE FORFEITURE ISSUE HEARING AFTER |
| Defendant. | ) | THE VERDICT |
| | ) | |

BEFORE THE HONORABLE ALEX R. MUNSON
CHIEF JUDGE and Jury
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

FILED
Clerk
District Court

OCT - 4 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**APPEARANCES**:

For Plaintiff:      Patrick J. Smith
                    Assistant United States Attorneys
                    MARIANAS DISTRICT
                    Horiguchi Building, Third Floor
                    P. O. Box 500377
                    Saipan, MP 96950
                    Telephone: (670) 236-2979
                    Facsimile: (670) 236-2945
                            and
                    FBI Special Agent Douglas E. Small

For Defendant:      Joseph H. Arriola, Esq.
                    2nd Floor Oceanside Plaza, Ste. 305
                    Beach Road, Garapan
                    P. O. Box 505080 CK
                    Saipan, MP 96950
                    Telephone: (670) 234-5501
                    Facsimile: (670) 234-5503
                            and

2

|   |   |   |
|---|---|---|
| 1 |  | Pedro M. Atalig, Esq. |
| 2 |  | (Now deceased) |
| 3 | Present : | Defendant Mr. Soon Kyung Park |
| 4 | Korean Interpreters: for defendant | Mr. PARK Mu Chuel for 8/30/04 only & Mr. Alex Tae for 8/31/04, then Ms. PARK Sun Hu for 9/1/04 & back with Mr. Alex Tae for 9/2/04 to end of trial.  Ms. CHO Eun Young interpreted for the defendant during the forfeiture hearing on 9/8/04. |
| 7 | Chinese-English Interpreter : | Ms. Yumei Xie Rabauliman for court |

*SANAE N. SHMULL*
Official Court Reporter
P. O. BOX 5128
SAIPAN, MP 96950

**GARAPAN, SAIPAN, MONDAY, SEPTEMBER 8, 2004 - 3:25 P.M.**

THE COURT: All of the jurors have left the presence of the courtroom. Let's take up the matter now of the forfeiture. Mr. Smith, did you want to make any introductory or opening statement?

MR. SMITH: Briefly, Your Honor. There're three specific accounts assets to which the government seeks forfeiture. As to the Tinian University account at the Bank of Guam as well as the Saipan University account at the Bank of Guam, there's ample evidence in the record to support that probable cause determination.

We also heard from Special Agent Small with respect to the Jesus I. Taisague account. And the testimony came out through Special Agent Small, Your Honor, that funds were disbursed from the Bank of Guam account in which tuition funds, obtained from students, had been deposited, that a check was cut to Jesus Taisague that was converted into a money order and then deposited in Jesus Taisague's account, and then seized pursuant to a seizure warrant.

The only issue that's not in the record with respect to this account is simply the identifying information and the location of the account. And on that issue, I would call Special Agent Small in just a minute just to establish by refreshing his recollection with a seizure warrant where the account is located and what the account number is.

Judge, as to the money judgment, the government is entitled to a money judgment of all the funds traceable to the scheme. We summed up, as Your Honor heard, and there is proof in the record, that the proceeds defrauded exceeded $500,000. That's the amount that's pled in the indictment. So that's what we're limited to in seeking the money judgment. But we ask for money judgment based upon the same analysis that I argued to the jury in finding the loss figure. We have a loss figure from the jury beyond a reasonable doubt of $400,000. But as I summed up to the jury, 88 x 6,700 is approximately, I think, it was $560,000. I have to check the figure again. But it's in excess of $500,000. So that's what I plan to do, call Special Agent Small briefly to establish the identity of the account which is the subject of Question 3 on the proposed verdict form. And that'll be it for additional proof.

THE COURT: Thank you. Mr. Arriola, did you want to make any kind of opening statement at this time?

MR. ARRIOLA: No, Your Honor.

THE COURT: Mr. Smith, you may call your first witness.

MR. SMITH: Your Honor, the government calls Special Agent Douglas E. Small.

THE WITNESS: Do I stand or --

THE COURT: You may be seated. Special Agent Small, you

1   understand that you are still under oath?

2   THE WITNESS: Yes, I do.

3   THE COURT: Thank you. You may proceed, Mr. Smith.

4   MR. SMITH: Thank you, Your Honor. May I approach this

5   witness?

6   

7   THE COURT: You may.

8   **DOUGLAS E. SMALL,**

9   recalled to the stand on behalf of the government, testified as

10  follows:

11  

12  **DIRECT EXAMINATION**

13  BY MR. SMITH:

14  Q   Agent Small, I've placed before you what's marked as

15  Government's Exhibit 35 for identification, and I'd ask, please, if

16  you could refresh your recollection using that with respect to the

17  

18  name of the account and account number into which you previously

19  testified Jesus Taisague deposited funds obtained from Saipan

20  University.

21  A   Yes, it's the Bank of Hawaii account in Saipan. It's under

22  Jesus I. Taisague, and the account number is 0032297 -- pardon me --

23  93794.

24  

25  THE REPORTER: What's the beginning, 00?

    THE WITNESS: 00322-93794.

Q   BY MR. SMITH: And just so we're clear, earlier in your testimony, you told us that Jesus Taisague had obtained funds that was supposed to go towards the surety bond and had instead placed those account funds from the Tinian University account at Bank of Guam into this account that you just referenced.

A   Yes, that's correct.

Q   And were those funds proceeds of the Saipan University tuition scheme to get funds from students in China?

A   Yes.

MR. SMITH: No further questions, Your Honor.

**(End of Mr. Smith's direct of Special Agent Douglas E. Small.)**

THE COURT: Thank you, Mr. Smith. Mr. Arriola, did you want to cross-examine?

MR. ARRIOLA: Your Honor, we have no questions.

THE COURT: Thank you, sir. You may step down. Do you have any other witnesses?

MR. SMITH: No, Your Honor.

THE COURT: Do you have any witnesses?

MR. ARRIOLA: No, Your Honor.

THE COURT: Do you want to make any argument at this time?

MR. SMITH: Thank you, Your Honor. I think in my opening remarks, I summarized why the court should find, by preponderance of

the evidence, "yes" as to each of the first three questions in the proposed special verdict form that would have gone to the jury. Your Honor heard ample evidence of the receipt of funds into the Bank of Guam account. Those records are in evidence, and the court's permitted to rely on those in making the forfeiture determination. We had specific evidence of wire transfers into the account. You also have Government's Exhibit 125, which was the internal summary prepared by this fellow James at Saipan University. The Saipan University account from Bank of Guam is also in the record. And now we have the testimony that links up the Jesus I. Taisague account to the disbursement out of the Bank of Guam account, Tinian University. There's a check that's in that Government's Exhibit 125 to Jesus Taisague, and that links up with the funds that were then deposited by Jesus Taisague into his own account.

As to the money judgment, Your Honor, as I noted before, we already have a beyond a reasonable doubt finding as to $400,000. The additional $100,000 to support this money judgment is simply, again, an average analysis based upon what students paid in China; approximately $6,700 each and 88 students yields a sum in excess of $500,000 if you multiply that out.

Those are the findings we're asking the court to make.

THE COURT: Thank you. Mr. Arriola?

MR. ARRIOLA: Your Honor, we waive any arguments.

THE COURT: All right, the court is ready to rule. I do find by a preponderance of the evidence that all United States currency funds or other monetary instruments credited to Account 0103-142160 in the name of Tinian University, located at the Bank of Guam, Saipan, CNMI, constitutes or is derived from proceeds traceable to the travel fund violation. And, accordingly, it is subject to and is forfeited.

I base that on all of the evidence presented in this case. Certainly, it satisfies the preponderance of the evidence standard or more probable than not. Quite frankly, if I had to, I would make a finding beyond a reasonable doubt; not necessary here.

I also make a finding by a preponderance of the evidence that all United States currency funds or other monetary instruments credited to Account No. 0103-150257 in the name of Saipan University, located at the Bank of Guam, Saipan, CNMI, constitutes or is derived from proceeds traceable to the travel fraud violation.

Accordingly, those funds are subject to and are -- subject to forfeiture and are forfeited.

Again, I base my finding upon all of the evidence that's presented in this case. The standard of the preponderance of the evidence is so well satisfied. Again, I would find beyond a

reasonable doubt if it were necessary.

Relative -- I do make a finding by a preponderance of the evidence that all United States currency funds or other monetary instruments credited to Account No. 0032293794 in the name of Jesus I. Taisague, located at the Bank of Hawaii, Saipan, CNMI, constitutes or is derived from proceeds traceable to the travel fraud violation.

This money was taken out of the Bank of Saipan -- I mean, the University of, Saipan University's account and deposited for safety reasons -- as what the evidence showed, so that it wouldn't be dissipated -- into Mr. Taisague's account at the Bank of Hawaii. And I do find from all of the evidence presented in the case that this money does constitute or is derived from proceeds traceable to the travel fraud violation and is subject to forfeiture and is forfeited.

Again, if I had to make a finding, which I don't, it would certainly be well beyond the preponderance of the evidence.

I also make a finding by a preponderance of the evidence that $500,000 constitutes or is derived from proceeds traceable to the travel fraud violation.

If you take the average figure of $67,000 and multiply that times 88 students, you come up with $589,600.00, which is certainly way beyond $500,000. And, accordingly, that amount, $500,000, I find, is derived from proceeds traceable to the travel fraud

violation.

Anything else regarding this issue?

MR. SMITH: Yes, Judge. Pursuant to Rule 32.2, we'll submit a proposed preliminary order of forfeiture. And I think the next step in the process is to see whether if there is any third-party claims filed with respect to those assets. And then a final order of forfeiture can follow from that. So we'll follow the procedure in Rule 32.2.

THE COURT: And you'll prepare an order to that effect?

MR. SMITH: We will.

THE COURT: Thank you. Anything further from the defense on this issue?

MR. ARRIOLA: No, Your Honor.

THE COURT: Mr. Park, the court finds you guilty as charged of the three counts in the superseding indictment charging you with interstate and foreign transportation of persons in execution of a scheme through fraud on or about September 8, 2003 in Count I.

Count II, which is the same charge, on or about September 27, 2003, and also Count III, which is the same charge, which found you guilty on or about -- I mean, which took place on or about October 5, 2003, the court also finds beyond a reasonable doubt that you were an organizer or leader of criminal activity charged in the

superseding indictment.

The court also finds beyond a reasonable doubt with respect to the scheme to defraud alleged in the superseding indictment that the loss exceeded $400,000. The special question, of course, was found by the jury.

The court also finds beyond a reasonable doubt with respect to the scheme to defraud alleged in the superseding indictment that the offense was committed through mass marketing.

The court also finds beyond a reasonable doubt with respect to the scheme to defraud alleged in the indictment that there were at least 50 victims.

And the court also finds beyond a reasonable doubt with respect to the scheme to defraud alleged in the indictment that a substantial fraudulent scheme was committed from outside of the United States.

Are there any exceptions to the verdict, Mr. Smith?

MR. SMITH: No, Your Honor.

THE COURT: Mr. Arriola?

MR. ARRIOLA: No, Your Honor.

THE COURT: Mr. Park, because you have been found guilty, sentencing must take place. I will set this matter for sentencing on Tuesday, December 14, 2004 at 9:00 o'clock in the morning in this

court. I'll also order that the presentence investigation report is due on or before November 9, 2004.

Mr. Park, before sentencing can occur in this case, the Probation Department has to conduct an investigation. You are required to cooperate in that investigation by meeting with the Probation Officer and giving information. At any time you meet with the Probation Officer, you may have your attorney present with you. Do you understand that?

THE DEFENDANT: (After translation, defendant answered in English) Yes.

THE COURT: Mr. Park, after the Probation Officer has completed the investigation, they will prepare a written report and give a copy to you and your lawyer. If you think there are any mistakes in the written report, you can meet with the Probation Officer. And if you can convince them that there's a mistake, they will amend the report. If you cannot convince them to amend the report, both your lawyer and you, at the time of sentencing, will be able to address the court. And the judge will make a determination whether to accept or to reject the facts reported. Do you understand that?

THE DEFENDANT: (In English) Yes.

THE COURT: At the sentencing hearing, your lawyer will be

able to address the court on your behalf.  And you, too, will be able to address the court if you care to make your allocution or tell the sentencing judge anything you think would be important for the judge to know before he imposes a sentence.  And if you care to make any statement, you can do it not under oath.  Do you understand that?

THE DEFENDANT: (In English) Yes.

THE COURT: Is there anything further to come before the court regarding this case from the government?

MR. SMITH: No, Your Honor.

THE COURT: Anything from the defense?

MR. ARRIOLA: No, Your Honor.  Thank you.

THE COURT: There being nothing further to come before the court regarding this matter, I will remand the defendant back into the custody of the United States marshal until further order of the court and we will stand in adjournment.

(Court recessed at 4:00 p.m., Wednesday, September 8, 2004.)

------------------------------------------------------------

```
COMMONWEALTH OF THE         )
NORTHERN MARIANA ISLANDS    )    ss.
SAIPAN, MP                  )
_____)
```

I, SANAE N. SHMULL, Official Court Reporter for the United States District Court for the Northern Mariana Islands, do hereby certify:

That the foregoing additional jury trial transcript of the forfeiture hearing after the verdict in Criminal Case No. 04-00043, *United States of America v. PARK Soon Kyung, aka Piao Cun Jing, aka Dr. Park*, consisting of 13 pages was taken down by me stenographically with a back-up tape recording device at the times and place indicated herein.

That the foregoing transcript is a true and correct record of the proceedings transcribed by me to the best of my ability at the request of Attorney Gregory Baka, court-appointed attorney for defendant-appellant.

I further certify that I am not interested in the events of the action.

IN WITNESS WHEREOF, I have subscribed my name and signature this 4th day of October 2005.

_____
SANAE N. SHMULL
Official Court Reporter